ALAN H. MARTIN, Cal. Bar No. 132301
amartin@sheppardmullin.com
MATTHEW B. HOLBROOK, Cal. Bar No. 280729
mholbrook@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:  714-513-5100
Facsimile:  714-513-5130

Attorneys for
THOMAS A. SEAMAN, RECEIVER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>LAMBERT VANDER TUIG (a/k/a LAMBERT VANDER TAG a/k/a DEAN I. VANDER TAG), THE CAROLINA DEVELOPMENT COMPANY, INC. (a/k/a THE CAROLINA COMPANY AT PINEHURST, INC.), AND JONATHAN CARMAN,<br><br>　　　　　　Defendants. | Case No. 8:06-cv-00172-AHS-MLG<br><br>**RECEIVER'S RESPONSE TO OBJECTION OF J. SPRINGER; DECLARATION OF THOMAS A. SEAMAN**<br><br>Hearing: None set<br><br>Judge:  Hon. George H. King<br><br>Complaint Filed:  February 16, 2006 |

-1-

SMRH:476976631.2

## I. INTRODUCTION

In accordance with the Court's April 27, 2016 order (Docket # 855), Thomas A. Seaman ("Receiver"), hereby submits his response to Joseph Springer, M.D.'s ("Springer") objection (Docket # 854, the "Objection") to (i) the Receiver's Motion to Sell Real Property, Conclude Affairs of the Receivership, Approve Receiver's Final Account & Report, and Discharge Receiver, (ii) the Receiver's Fourteenth and Final Fee Application, and (iii) Sheppard, Mullin, Richter & Hampton LLP's ("SMRH") Fourteenth and Final Fee Application (collectively, the "Final Filings").

The fees and expenses incurred by the Receiver and SMRH are fair and reasonable in light of the complexity and multitude of issues raised in this case and the Final Filings should be granted in their entirety. As detailed below and in the Receiver's Final Account & Report, the Receiver and his counsel expended a great deal of time and effort unraveling the Defendants' complex Ponzi-like scheme to defraud investors. **As a result of these efforts, the Receiver ultimately collected over $21,000,000 in proceeds for the benefit of the Defendants' victims.**

In connection with obtaining as large a recovery as possible for the investor-victims, the Receiver necessarily incurred various costs for his time, the time of his staff, legal fees, tax accounting fees, and fees for other professionals who assisted with the Receiver's evaluation of the estate's assets (i.e. appraisers, technical advisers, land use and other consultants). As detailed below, the fees and expenses incurred by the Receiver and SMRH have all been previously scrutinized and approved by both the SEC and the courts (other than fees and expenses requested in connection with the current period covered by the Receiver's and SMRH's fee applications, which fees and expenses are currently before the Court). Notably, as explained in more detail below, where Judge Stotler felt there were

inefficiencies in expenses incurred, she previously reduced the amount of fees awarded. In other words, all fees and expenses of the Receiver and SMRH to date were only approved after extensive review by the SEC and the judicial system at each step of the process. The SEC has also filed a memorandum in support of the Final Filings.

Both the Receiver and SMRH have submitted extensive, detailed records in connection both with the pending Final Filings and all previous fee applications. The Objection, however, fails to identify any specific items in either the Final Filings or previous fee applications to which Springer objects. Moreover, Springer's assertion that this case is "replete with abuse by the attorneys involved" is wholly without merit and completely unsubstantiated. Springer provides no support for such a claim, which is completely at odds with the record in this case where the SEC and the Court have overseen and approved the actions taken by the Receiver and his counsel since the inception of this case.

## II. THE FEES INCURRED BY THE RECEIVER AND SMRH ARE REASONABLE FOR THE WORK PERFORMED

As more specifically set forth in the Final Filings, over the course of this case the Receiver and/or SMRH have, among other things:

- Seized business premises, books and records, and funds on deposit.

- Established and managed investor communications, established an investor website, held public meetings; held smaller meetings with active investor groups, and solicited and processed Investor Questionnaire Forms which became the basis for the claims process.

- Conducted due diligence on extensive and oftentimes complex real estate holdings across multiple states, including California, North Carolina, Texas, and Nevada.

-3-

SMRH:476976631.2

- Closed 19 transactions involving real property owned by the receivership entities resulting in a recovery in excess of $10,000,000.

- Recovered $80,000 from a religious organization that was a gratuitous donee.

- Recovered disgorgement proceeds of $311,565.21 from company sales people and approximately $452,000 from former counsel.

- Performed a forensic accounting of the sources and uses of investor funds which was required because the receivership entities did not maintain accounting records.

- Resolved various tax matters of the estate.

Given the nature of Defendants' Ponzi-like scheme and the efforts Defendants' took to conceal their actions, the foregoing required a substantial amount of work, all of which is detailed in the Receiver's prior reports and the Receiver's and SMRH's prior fee applications. As a result of the Receiver's and SMRH's work, investors will ultimately receive approximately 25% of their investments back. Despite all of the extensive information available to Springer, the Objection fails to cite even one task undertaken by the Receiver or SMRH which Springer believes was not in the best interest of the estate. Without any such detail, the Objection should be overruled and the Final Filings granted in full.

### III.     THE WORK PERFORMED BY THE RECEIVER AND SMRH HAS BEEN REVIEWED AND APPROVED BY THE SEC AND JUDGE STOTLER THROUGHOUT THE PENDENCY OF THIS CASE

The SEC has supported all prior fee applications of the Receiver and SMRH as well as the current Final Filings. (See Docket #s 56, 89, 151, 207, 281,

SMRH:476976631.2

372, 473, 542, 617 (Declaration of Thomas A. Seaman attached thereto), 673, 711, 772, 814, 852.)

Additionally, the prior fee applications were reviewed and approved by Judge Stotler. Notably, Judge Stotler scrutinized each of the Receiver's and SMRH's prior fee applications. For instance, in connection with SMRH's tenth interim fee application, Judge Stotler awarded SMRH $32,590.14 less than requested to address what she viewed as certain inefficiencies in the work performed. (See Docket # 675.) In short, at no point during this case have the Receiver's or SMRH's fees been "rubber stamped" by either the Court or the SEC.

## IV. SPRINGER'S OBJECTION IS UNTIMELY

Pursuant to Local Rule 7-9, any objection to the Final Filings was due no later than twenty-one (21) days before the date designated for the hearing of the Filing Filings. Notice of the foregoing deadline was also included on the Final Filing notices with which Springer was served. (See Docket #s 843, 846, 847.) As the Final Filings were set for hearing on April 25, 2016, any objection should have been filed no later than April 4, 2016. Because Springer's Objection was not filed until April 26, 2016, it should be disregarded as untimely. Notably, the Objection is dated as of April 20, 2016; even allowing for a delay between mailing the Objection to the Court and its formal filing, the Objection was not even prepared until more than two weeks beyond the deadline for filing objections.

## V. PRIOR CORRESPONDENCE WITH SPRINGER

Throughout the course of this case, Springer has repeatedly objected to fee applications submitted by SMRH and the Receiver. (See, e.g., Docket #s 61, 93, 95, 109, 144, 172, 173, 197, 267, 303, 343, 397, 500, 683, 720.) Notwithstanding such objections, Judge Stotler previously reviewed and approved the prior fee

applications of the Receiver and SMRH. Outside of filings with the Court, the Receiver has previously communicated with Springer in order to address his concerns. (Declaration of Thomas Seaman, the "Seaman Decl.," ¶ 2.) In September 2007, the Receiver sent Springer a letter addressing a number of concerns he had raised at that time. (Seaman Decl., ¶ 3.) Additionally, prior to the filing of this response, the Receiver again wrote Springer to address the issues raised in his most recent objection. (Seaman Decl., ¶ 4.) In short, the Receiver has attempted to address Springer's concerns over the course of this case and has by no means ignored Springer's concerns.

## VI. CONCLUSION

For all of the foregoing reasons, the Final Filings should be granted in their entirety.

Dated: May 9, 2016

                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                            */s/ Matthew B. Holbrook*
                By _____
                         ALAN H. MARTIN
                      MATTHEW B. HOLBROOK
                           Attorneys for
                 THOMAS A. SEAMAN, RECEIVER

SMRH:476976631.2

# DECLARATION OF THOMAS A. SEAMAN

I, Thomas A. Seaman, declare and affirm as follows:

1. I am the duly-appointed Receiver in this matter. If called upon to testify, I am prepared to do so competently.

2. Outside of formal court filings, I have previously communicated with Joseph Springer, M.D. ("Springer") in order to address his concerns as to my handling of this receivership.

3. In September 2007, I sent Springer a letter addressing a number of concerns he had raised up to that time. A true, correct and complete copy of the September 2007 letter is attached hereto as Exhibit A.

4. Additionally, prior to the filing of this response, I again wrote Springer to address the issues raised in his most recent objection. A true, correct and complete copy of my most recent letter is attached hereto as Exhibit B.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on May 9, 2016.

_____
THOMAS A. SEAMAN

SMRH:476976631.2

# EXHIBIT A

# EXHIBIT A

Thomas Seaman Company

1 Park Plaza, Suite 370
Irvine, CA 92614

Telephone (949) 222-0551
Facsimile (949) 222-0661
E mail tom@thomasseaman.com
E mail alison@thomasseaman.com

Thomas A. Seaman, CFA
Principal

September 12, 2007

Joseph Springer, MD
11100 E. 14th Avenue
Aurora, CO   80010

    Re:   SEC vs. Carolina Development, Vander Tuig, et al

Dear Dr. Springer:

    I am in receipt of your letter of August 27, 2007 and am writing to confirm to you that we have received your Preliminary Investor Response Form that your claim is therefore complete and no further action is required on your part.

    The Court has also provided me with certain letters you sent to Judge Stotler and I would also like to respond to the concerns you raised in these letters; the first being concern that certain golf professionals may have assisted the defendant with defrauding investors, and the second being concern that the receiver's fees were too high. You may recall that I attempted to contact you by telephone after receiving the letters and I am taking this opportunity to address your concerns.

    Early in our investigation we learned that Carolina Development Company (the "Company") had used the names and images of three prominent golf professionals in its sales materials, Arnold Palmer, Jack Nicklaus, and Greg Norman. Based on our review of the Company's books and records, it was clear that Arnold Palmer and Jack Nicklaus had absolutely no involvement with the Company and it was apparent from the Company's records that the Company was not authorized to use either gentlemen's name or image. Greg Norman's case was somewhat different in the Company had contracted with Norman to design a golf course near the Celina, Texas property. In accordance with that contract, Norman received $500,000 from the Company. I have sought and obtained legal advice as to whether the receivership estate has a claim against Norman and based on that advice I have declined to bring any legal action against Mr. Norman at this time.

    With regard to the fees of the Receiver, while I understand that the fees appear high to you, I would respectfully remind you that this is a securities fraud investment case with significant legal and business issues to be resolved, not made easier by uncooperative defendants who have plead the fifth amendment and who have continued to steal and hide company assets. I would respectfully point out all fees are carefully

Joseph Springer, M.D.
September 12, 2007
Page 2

accounted for with detailed descriptions of the work performed. The bills are then carefully scrutinized by the Securities and Exchange Commission and carefully reviewed by the Judge and her staff before being approved by the Court. Moreover, the detailed bills, in tenth of the hour increments, are posted on the internet, and there is a public hearing where objections can be raised. I would also invite to read the fee applications and the several reports I have filed with the court to get a better concept of the work involved in closing down a fraud and recovering money for investor-victims. After review of these documents I believe you will ultimately understand that our fees were necessary and proper. If you wish to discuss the matter or any other matter concerning the receivership estate, you may feel free to call me at the letter number noted in our letterhead.

    Yours very truly,

    THOMAS SEAMAN COMPANY


    Thomas A. Seaman, CFA
    Receiver for Carolina Development Company

# EXHIBIT B

# EXHIBIT B

**THOMAS SEAMAN COMPANY**

3 PARK PLAZA, SUITE 550
IRVINE, CA 92614

TELEPHONE (949) 222-0551
FACSIMILE (949) 222-0661
E mail tom@thomasseaman.com

THOMAS A. SEAMAN, CFA
PRINCIPAL

May 9, 2016

Joseph Springer, M.D.
1017 Cuba Avenue
Alamogordo, NM 88310-5815

Re: Securities and Exchange Commission v. Lambert Vander Tuig, et. al.;
United Stated District Court, Central District of California;
Case No. 8:06-cv-00172-AHS-MLG

Dear Dr. Springer:

I am writing in connection with your April 20, 2016 letter to the above-referenced Court which the Court has forwarded to me. The Court has asked me to file a reply. The reply will be filed shortly with the Court and I will send you a copy once it is filed. I also wanted to personally make sure you are fully aware of some of the facts and circumstances surrounding this case.

As an initial matter, the Defendants in this case were never "exonerated" from their actions. To the contrary, the SEC obtained a civil judgment against Defendants Lambert Vander Tuig and Jonathan Carman. Specifically, as to Vander Tuig, the Court ordered, among other things, disgorgement of over $29,000,000 and the payment of a penalty of $100,000. Defendant Carman was ordered to disgorge over $2,000,000 and pay a penalty of $100,000. The defendants were also permanently enjoined from violating the securities laws.

In addition to the SEC's civil action, the State of California also pursued criminal charges against Lambert Vander Tuig, Jonathan Carman, Mark Sostak, Soren Svendsen, Robert Waldman, and Scott Yard. The criminal charges resulted in prison sentences of 20 years for Vander Tuig, 12 years for Carman and lesser sentences for the sales people and general counsel.

While I am sympathetic over the loss of a substantial portion of your investment, please understand that my team and I have done everything within our power to recover funds for you and your fellow investors. As a result of our efforts, investors will have received approximately 25% of their investment back. The results could have been vastly worse had the SEC not quickly taken action with its motion for a TRO, and the Receiver and Court not acted quickly to liquidate real property assets in advance of the real estate crash of 2007 and 2008. For example, the largest source of recovery was the sale of the Celina

Dr. Joseph Springer, M.D.
May 6, 2016
Page 2

Bridges land north of Dallas, Texas. The defendants had purchased 786 acres for $29,400,000 in part with short term financing of $23,500,000. The Receiver sold the land for $30,000,000 just prior to the financial crisis. Had additional time passed, the Receiver may not have been able to sell the land and the lenders would have foreclosed, wiping out Carolina investors' equity and investors would have recovered over six million dollars less than they did. As will be further explained in the reply being filed in response to your objection, my fees and the fees of the other professionals I retained to work on this case are reasonable in light of the situation we stepped into at the outset of this matter. The Receiver encountered numerous complex matters requiring legal advice including protracted turnover and contempt motions against extremely uncooperative defendants and their spouses, several disgorgement matters, three legal malpractice matters, real estate development issues, abandonment of certain worthless land purchase options and real estate partnership interests, countless real estate assets and transactions in North Carolina, Texas, California, and Nevada. There was also the matter of the 11th Hour investors and return of funds from a prominent church that was a gratuitous donee of ill-gotten gains.

You should also be aware that Carolina Development was selling unregistered securities and thus the SEC did not "grant the defendants privileges to conduct their style of business" as you suggest.

I am hopeful you find the forgoing informative. If you wish to discuss the matter, or have additional questions, feel free to call me.

Yours very truly,

THOMAS SEAMAN COMPANY

Thomas A. Seaman, CFA
Receiver for Carolina Development